**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>FRANCK'S LAB, INC., )<br>d/b/a FRANCK'S COMPOUNDING LAB, )<br> a corporation, and )<br>PAUL W. FRANCK, an individual, )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 5:10-cv-00147-TJC-GRJ |

**DECLARATION OF KENNETH PETTENGILL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Kenneth Pettengill, hereby declare as follows:

1. My name is Kenneth Pettengill. I submit this declaration based on personal knowledge in support of the opposition filed by Franck's Lab, Inc. ("Franck's") and Paul W. Franck individually in response to the Food & Drug Administration's ("FDA") request for a preliminary injunction.

2. I graduated from the University of Florida in 1985 with a Bachelor of Science in Microbiology and then in 1992 with a Bachelor of Science in Pharmacy. Following graduation in 1992, I became a licensed pharmacist in Florida.

3. I work as a pharmacist in the customer service department at US Compounding, a compounding laboratory headquartered in Conway, Arkansas. I began working for US Compounding on May 18, 2010.

1

4. Prior to working for US Compounding, I worked as a pharmacist at Franck's in its laboratory for compounding preparations. I was hired by Franck's on May 27, 2009. On May 14, 2010, I was notified that I was being laid-off and my employment terminated, effective as of May 17, 2010, as a result of Franck's decision to voluntarily suspend compounding of veterinary medications due to ongoing litigation with FDA. As of May 17, 2010, I was no longer employed with Franck's.

5. My role as a pharmacist in the US Compounding customer service department requires me to verify the new prescriptions for compounded medications that US Compounding customer service representatives receive from veterinarians.

6. Based on my experience in the US Compounding customer service department, it is the routine practice of the US Compounding customer service representatives to identify themselves as representatives of US Compounding when they answer a telephone call. In fact, I often hear them answering the phone in that fashion.

7. When I verify the prescription for a compounded preparation, it is my routine practice to begin the verification process with the following statement, "US Compounding will compound," and then I repeat the prescription to the veterinarian or authorized agent to verify. Once verified, I sign and date the order and return to the customer service representative to input the order into the US Compounding computer system. After the prescription is entered into the computer, I review the order again to ensure that it has been properly entered, and a copy of the order is printed simultaneously upon my verification at the customer service facility and the compounding laboratory in Conway, Arkansas. The prescribed preparation is then compounded in Conway, Arkansas.

8. My role as a pharmacist in the customer service department also requires me to answer customer inquiries and questions from veterinarians and animal owners relating to compounded preparations and to develop the formulations (*i.e.*, the "recipes") for new compounded preparations.

9. On July 13, 2010, I had been working for US Compounding for almost two months.

10. On July 13, 2010, a US Compounding customer service representative received a call from Alexis Ells with questions relating to a recent prescription for a horse at Ms. Ells' Equine Sanctuary that US Compounding had been requested to fill. Ms. Ells explained to me that on July 13, 2010 her veterinarian, Dr. Robert Saunders, had called in a prescription for N-acetyl-D-glucosamine ("acetyl-D"). To my knowledge, the prescription US Compounding received on July 13, 2010 for the sanctuary's horse was a new prescription. As discussed above, I would have verified the new prescription with the veterinarian or authorized agent before the order was inputted into the US Compounding computer system.

11. Ms. Ells explained that, although the acetyl-D prescription had already been called in, she had researched treatments for arthritis in horses and called to inquire if Adequan was equivalent to the already prescribed acetyl-D.

12. After I researched the two drugs, I told her that, although both Adequan and acetyl-D could be used to treat arthritis in horses, the two products were not equivalents.

13. Ms. Ells inquired if there was anything that could be used in conjunction with the already prescribed acetyl-D to better treat the horse. Based on my knowledge and

experience, I mentioned alternative formulations, including combination preparations with acetyl-D, but I explained to her that in order to modify the existing prescription from her veterinarian that she would need to discuss with her veterinarian the treatment options for the horse and her veterinarian would be required to order a new prescription. She told me she would discuss it with Dr. Saunders and that he would call me the following day with the decision.

14. US Compounding held the initial acetyl-D order until Ms. Ells had time to further discuss appropriate treatment options with her veterinarian.

15. On July 14, 2010 I did not hear from the veterinarian regarding the prescription for acetyl-D.

16. On July 15, 2010, realizing the importance of treating the horse's arthritis, I called Ms. Ells to inform her that I had not yet heard from Dr. Saunders regarding the acetyl-D prescription. Ms. Ells immediately called Dr. Saunders and had him join our call. We discussed alternative treatment options, including the combination preparation of the acetyl-D/chondroitin/hyaluronic acid. Dr. Saunders determined that the original prescription for acetyl-D remained the appropriate treatment. Once our conference call ended, I sent the original order for the compounded acetyl-D to the US Compounding facility in Conway, Arkansas.

17. US Compounding filled the prescription for acetyl-D on July 15, 2010, and it was sent via overnight mail to Ms. Ells.

* * * *

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and is executed on August 12, 2010, in Ocala, Florida.

*Ken Pettengill R.Ph.*
Kenneth Pettengill