UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> Plaintiff ) <br> ) <br> vs. ) <br> ) <br> FRANCK'S LAB, INC., ) <br> d/b/a FRANCK'S COMPOUNDING LAB, ) <br> a corporation, and ) <br> PAUL W. FRANCK, an individual, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 5:10-cv-00147-TJC-GRJ |

## SUPPLEMENTAL DECLARATION OF DR. ROBERT C. SAUNDERS, D.V.M.

I, Dr. Robert C. Saunders, hereby declare as follows:

1. On July 29, 2010, at the request of John Claud, a lawyer for the United States Food & Drug Administration ("FDA"), I signed a declaration relating to a veterinary prescription I had written for a client, The Equine Sanctuary, a non-profit organization providing refuge to horses in Ojai, California. The founder and operator of The Equine Sanctuary is Alexis Ells.

2. My July 29 declaration describes certain events and activities related to a prescription I wrote on or about July 13, 2010, to provide treatment to one of the horses at The Equine Sanctuary. Earlier this week, I learned through discussions with Alexis Ells and through additional investigation, that some of the statements in my July 29 declaration are incorrect or incomplete. I am concerned that without correcting those statements, the statements in my July 29 declaration may be misinterpreted or misconstrued. I am therefore

1

taking this opportunity to correct those statements and provide additional information that may be relevant to the issues before the Court.

3. On July 12, 2010, I received a call from Alexis regarding a male horse at the sanctuary that was experiencing soreness and was suffering some synovial swelling. I prescribed N-acetyl-D-glucosamine ("acetyl-D") to treat the horse.

4. On July 13, 2010, I called what I believed was Franck's Lab, Inc. ("Franck's") to fill the prescription for acetyl-D. I now understand that, because of Franck's agreement to voluntarily suspend its veterinary compounding practices, I was transferred to a US Compounding customer service representative. I first placed the order for acetyl-D with a US Compounding customer representative and then the prescription was verified by Kenneth Pettengill, who I now understand is a US Compounding pharmacist. Neither individual I spoke with represented themselves as working for or on behalf of Franck's.

5. On July 13, 2010, after Alexis researched alternative treatment options for the horse and spoke independently with Mr. Pettengill, I had another conversation with Alexis. During this conversation, Alexis and I discussed the alternative treatment options, including the potential use of a commercially available drug, Adequan, and the potential use of a combination product which included acetyl-D, chondroitin, and hyaluronic acid that had been mentioned to Alexis by Mr. Pettengill earlier that day.

6. Because I was unfamiliar with the combination product in a single injection vial that Alexis referenced, I posted an inquiry about the combination product on the Equine Clinician Network website to see what kind of responses would be posted regarding the use of the combination to effectively treat horses. I received a few responses, but nothing that

persuaded me to depart from my original medical assessment that acetyl-D was the medication I believed would best serve the needs of this horse.

7.  On the morning of July 15, 2010, I participated in a three-way telephone call with Alexis and Mr. Pettengill. I determined that acetyl-D was the most appropriate treatment for the horse. Alexis and I asked that US Compounding proceed with filling the original prescription for acetyl-D.

8.  I now understand that US Compounding filled the prescription in its Conway, Arkansas facility on July 15, 2010, and Alexis received the acetyl-D from US Compounding on July 16, 2010. Alexis informed me earlier this week that she has independently verified those facts.

9.  On July 27, 2010, I was contacted by John Claud and Jessica Zeller, counsel for FDA, and asked about my post on the Equine Clinician Network website. I discussed with Mr. Claud and Ms. Zeller the facts as I understood them at the time.

10. The following day (July 28), I received a draft declaration from Mr. Claud by way of facsimile transmission, reflecting our conversation from the previous day. A true and correct copy of the draft is attached hereto as Exhibit 1. In paragraph 9 of the draft declaration, the name of the pharmacist involved in the transaction was left blank. At the time, I was not able to provide the name of the pharmacist to Mr. Claud.

11. On July 28, after reviewing the draft declaration, I spoke again by way of telephone with Mr. Claud to discuss the draft declaration.

12. In paragraph 10 of the July 28 draft, the following statement appeared: "Franck's filled the original prescription on or about July 14, 2010." Although I knew that

Alexis had received the acetyl-D prescription on or about July 16, I could not personally attest to the accuracy of that statement. Mr. Claud suggested a revision that attributed the statement to what Alexis had informed me. I agreed to the change without verifying with Alexis that Franck's had been the compounding pharmacy to fill the prescription. Therefore, I am correcting my statement to make clear that I have no knowledge suggesting or indicating that Franck's filled the acetyl-D prescription.

13. Also during my July 28 telephone conversation with Mr. Claud, and after I had obtained Alexis' permission, I provided Mr. Claud with Alexis's name and contact information. Because Alexis received the final compounded preparation, I told Mr. Claud that she would be the best person to contact to obtain additional and specific information regarding this transaction.

14. Through discussions with Alexis and through additional investigation, I learned that any reference in my July 29 declaration to Franck's and to a Franck's pharmacist are incorrect. I now understand that the discussions with respect to the July 13 prescription of acetyl-D I ordered for Alexis' horse were with US Compounding representatives— not Franck's.

\* \* \* \*

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and is executed on August 12, 2010, in Santa Barbara, California.

*Dr Robert C Saunders*
_____
Dr. Robert C. Saunders